## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MOHAMMAD DEIS,

                Plaintiff,              CASE NO. 18-10482
                                   HON. DENISE PAGE HOOD

v.

OFFICER BRIAN
MITCHELL, *et. al*,

                Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#22] AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [#24]

I.      **BACKGROUND**

    **A. Procedural Background**

    On February 9, 2018, Plaintiff Mohammad Deis ("Deis") brought this action against Defendants Officer Brian Mitchell ("Mitchell"), Officer Michael Bacher ("Bacher"), Officer Hashin Zrien ("Zrien"), Officer Michael Guzowski ("Guzowski"), Sergeant Hatten ("Hatten"), and Officer Corey Smith ("Smith") (collectively "Defendants"). [ECF No. 11] Deis' allegations against Defendants include Unlawful Arrest (Count I), Retaliatory Arrest in violation of the First Amendment (Count II), Use of Excessive Force against Deis in violation of 42 U.S.C. § 1983 (Count III), Failure to Intervene (Count IV), and Malicious

1

Prosecution (Count V) [ECF No. 11, Pg.ID 59]  Deis seeks full and compensatory damages, punitive damages, reasonable attorney's fees and costs, and any other relief the Court sees just and proper. [*Id.*]

A Scheduling Order was issued by the Court on July 13, 2018, which ordered that discovery was to be complete on December 31, 2018.  [ECF No. 10] An Amended Scheduling Order was entered on October 3, 2019, which set a new deadline for completion of discovery by January 27, 2020.  [ECF No. 21]

This matter is before the Court on Defendants' Motion for Summary Judgment filed on February 24, 2020. [ECF No. 22] Deis filed a Response on March 16, 2020. [ECF No. 31] Defendants filed a Reply on March 25, 2020. [ECF No. 33] Deis also filed a Motion for Summary Judgment on February 24, 2020. [ECF No. 24] Defendants filed a Response on March 20, 2020, [ECF No. 32] and Deis filed a Reply on April 2, 2020. [ECF No. 34] Defendants and Plaintiffs' Motions are essentially cross-motions for summary judgment.

For the reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.  Deis' Motion for Summary Judgment is **DENIED**. The Court finds that there are material questions of fact in dispute regarding what happened at the gas station on June 2, 2017, which preclude summary judgment for both parties.

## B. Factual Background

The instant case involves two separate encounters between Deis and Dearborn Heights police officers on June 1, 2019, and June 2, 2019. Both parties provide factual scenarios that vastly contradict one another. The Court's recitation includes undisputed facts or otherwise notes where the parties' versions diverge.[1]

### 1. June 1, 2017

On June 1, 2017, Deis went to Van Houten Park in Dearborn Heights to play basketball. [ECF No. 11, Pg.ID 60] While Deis was waiting to play basketball he decided to smoke a cigarette. [*Id.*] Officer Michael Bacher was watching nearby. [*Id.*] The events that unfolded once Deis and Bacher interacted with one another are in dispute. Deis maintains that Bacher noticed Deis staring at him and shouted, "what the **** are you looking at?" [*Id.*] Deis then claims that he responded, "is it illegal to stare?" [ECF No. 24, Pg.ID 341] Deis then responded that he was going to play basketball. Next, Deis claims that Bacher said "no, you're not. You are getting . . . out of here." [*Id.*] After this exchange, Bacher ordered Deis to leave the park. [*Id.*]

Deis proceeded to play basketball, and Bacher called for backup. [ECF No. 31, Pg.ID 373] After Officer Hashin Zrien joined Bacher, they asked to see Deis' ID. [*Id.*] Deis claims that he told the officers that he had his ID, but he did not want to produce it. [*Id.*] According to Deis, Zrien was understanding, and instructed Deis

---

[1] When the parties differ on material facts, the Court views those facts in favor of the nonmoving party.

to just leave the park. [*Id.*] Once Deis began to leave, he was apprehended by Bacher. [*Id.* at 374] Bacher detained Deis and obtained his ID. [*Id.*] At this point, Bacher arrested Deis for "disorderly conduct." [ECF No. 24, Pg.ID 342]

## 2. June 2, 2017

On June 2, 2017, Deis went to the police station to fill out a complaint against Bacher. [ECF No. 31, Pg.ID 374] Following his visit to the police station, Deis and his friend stopped at a Shell gas station to purchase a beverage and cigarettes. [*Id.*] Upon entering the store, Deis saw Sergeant Hatten and asked him whether individuals can be banned from public parks. [*Id.*] According to Deis, Hatten responded, "oh Deis, good luck with your ***** complaint," and ignored his question. [*Id.*]

Next, Officer Smith walks into the gas station and, according to Deis, when Smith walks past Deis, he yells explicatives at him. [ECF No. 24, Pg.ID 343] Deis proceeds to get in line to buy his items. [ECF No. 31, Pg.ID 375] While in line, Deis' wife calls him on the phone to ask what is taking so long. [*Id.*] Deis then claims that Smith once again started yelling at him in line. [*Id.*] It is then undisputed that the cashier requests that Deis leave the station. [*Id.*] Following the cashier's request, Deis exits the store. [*Id.*] Once Deis arrives at his car, Smith grabs him, spins him around, throws him to the ground, and places his knee on Deis' back. [*Id.*] Deis alleges that Smith then spit on him, smacked him in the face, handcuffed him, and

placed him into the police car. [*Id.*] Defendants transported Deis to the police station and booked him for disorderly conduct. [*Id.*]

After Deis made bond, he went to the emergency room. At the emergency room, Deis complained of back and shoulder pain. [*Id.*] Due to sustained discomfort, Deis visited another doctor six months later. [ECF No. 22-2, Pg.ID 173] Deis' second visit revealed that he suffered from a ruptured disk. [ECF No. 24, Pg.ID 344] It is inconclusive as to whether the June 2, 2017 arrest caused Deis' ruptured disk. [ECF No. 22-2, Pg.ID 344]

Following both events on June 1, 2017, and June 2, 2017, Deis plead no contest to the June 1st charges in exchange for the Government dismissing the June 2nd charges. [*Id.* at 176]

## II.    ANALYSIS

### A. Standard of Review

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). A fact is material if it could affect the outcome of the case based on the governing substantive law. *Id.* at 248. A dispute about a material fact is genuine if, on review of the evidence, a reasonable jury could find in favor of the nonmoving party. *Id.*

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must "go beyond the pleadings and … designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. The Court may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Conclusory allegations do not create a genuine issue of material fact which precludes summary judgment." *Johari v. Big Easy Restaurants, Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003).

When reviewing a summary judgment motion, the Court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### B. Officers Mitchell and Guzowski

Defendants argue that Deis' claims against Officers Brian Mitchell and Michael Guzowski fail as a matter of law because neither officer was involved in either of the contested events on June 1, 2017 or June 2, 2017.

Plaintiffs alleging civil rights violations against government officials "must demonstrate that each government-official defendant, through the official's own individual actions has violated the constitution." *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014). A defendant's "[p]ersonal involvement is necessary" to establish liability. *Hayerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012). "[T]o establish liability and to overcome a qualified immunity defense, an individual must show that his or her *own* rights were violated, and that the violation was committed *personally* by the defendant." *Robertson*, 753 F.3d at 615. (Emphasis in original). "Each defendant's liability must be assessed individually based on his own actions." *Binay v. Betterdorf*, 601 F.3d 640,650 (6th Cir. 2010).

Defendants contend that Deis cannot establish that either Mitchell or Guzowski participated in any violation of Deis' constitutional rights because neither Mitchell nor Guzowski was present for Deis' arrests on June 1, 2017 or June 2, 2017. The Court agrees. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 311 (6th Cir.

2005) (affirming the district court's grant of summary judgment as it related to a detective who "was not actually involved in placing [defendant] under arrest").

Guzowski was assigned to the case after it had been closed and sent to the prosecutor. [ECF No. 22, Pg.ID 141] And Mitchell was simply a passive participant who sent the relevant information regarding Deis' arrest to the prosecutor for review. *See Novak v. City of Parma,* 932 F.3d 4212,435 (6th Cir. 2019) (explaining that absent a finding of misinformation, gross omissions, or intentional misrepresentations, sending information to a magistrate judge cannot be considered malicious prosecution).

### C. June 1, 2017 Claims

Defendants assert that Deis' claims for unlawful arrest, retaliatory arrest, excessive force, failure to intervene, and malicious prosecution stemming from the June 1, 2017 incident fail as a matter of law because Deis entered a no contest plea, which precludes his unlawful arrest claim. The Court agrees.

Under *Heck v. Humphrey*, plaintiffs seeking § 1983 damages for allegedly unconstitutional convictions, imprisonments, or other harms that would invalidate a conviction, must prove that the conviction has been reversed on direct appeal, expunged by an executive order, invalidated by an authorized state tribunal, or "called into question" by a federal court's grant of a writ of habeas corpus. 512 U.S. 477, 487 (1994). Defendants also point out that Sixth Circuit precedence requires

that pleas have res judicata effect for plaintiff seeking damages for false arrest. *See Walker v. Shaffer*, 854 F.2d 138, 142-43 (6th Cir. 1988) (determining that the plaintiff's § 1983 claim for false arrest was precluded by his prior plea of nolo contendere in state court proceedings); *see also Marti v, Girad*, 215 F.3d 1327 (6th Cir. 2000). Here, it is undisputed that none of those exceptions apply. [ECF No. 31, Pg.ID 384] ("Plaintiff's nolo plea precludes an attack of probable cause on the first arrest . . . .").

Although it appears that Defendants do not claim that the no contest plea precludes the June 2, 2017 claims,[2] Deis argues that his no contest plea does not preclude his claims regarding the June 2, 2017 event. Citing *Muhammad v. Close*, Deis asserts that since his second charge for June 2, 2017 was dismissed he raises a claim in which habeas relief could not have been granted. 540 U.S. 749 (2004) (per curiam). Deis explains that his case is analogous to *Butler v. Compton*, which held that when a plaintiff's previous charges are dismissed as part of a plea agreement, there are no related underlying convictions that could be invalidated by a future § 1983 claim. 482 F.3d 1277, 1280–81 (10th Cir. 2007); *see also Wiggins v. Metropolitan Government of Nashville & Davidson Cty.*, 2017 WL 4863166 at *3 (May 8, 2017) (allowing a § 1983 claim to proceed when it was based on an alleged

---

[2] Defendants brief provides no case law or argument to establish that a no contest plea for one arrest would preclude claims for another arrest that may be closely related (i.e., here, where Deis asserts that his second arrest was in retaliation for complaining about the first arrest).

body-cavity search for a criminal count that did not result in a conviction). The Court agrees. Defendants' Motion as it pertains to the claims for unlawful arrest, retaliatory arrest, excessive force, failure to intervene, and malicious prosecution stemming from the June 1, 2017 incident is **GRANTED**. Deis' claims against all Defendants for the June 1, 2017 incident are **DISMISSED**.

### D.  Qualified Immunity

Defendants argue that all of Deis' claims are barred by qualified immunity. Deis argues that the officers are not entitled to qualified immunity because a material issue of fact exists as to whether the officers' conduct during the June 2, 2017 incident was objectively reasonable under the Fourth Amendment.

Government officials are entitled to qualified immunity where their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Green v. Reeves*, 80 F.3d 1101, 1104 (6th Cir. 1996) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  A government official will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that the action at issue was lawful; but if an officer of reasonable competence could disagree on this issue, immunity should be recognized.  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  Qualified immunity is an initial threshold question the court is required to rule on early in the proceeding so that the costs and expenses of trial are avoided where the defense is dispositive.

*Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  *Id.*

The first inquiry to determine qualified immunity is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right.  *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).  If no constitutional right would have been violated, there is no necessity for further inquiries concerning qualified immunity. *Saucier*, 533 U.S. at 201.  If a violation could be made out, the next step is to determine whether the right was clearly established in light of the specific context of the case, not as a broad general proposition.  *Id.*  Under the doctrine of qualified immunity, an official will not be found personally liable for money damages unless the official's actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow*, 457 U.S. at 818.  The "clearly established" right allegedly violated by the officials cannot be considered at an abstract level, but must be approached at a level of specificity:  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

### 1.  Qualified Immunity for Unlawful Arrest

The parties dispute the facts surrounding the June 2nd arrest. Deis argues that Defendants did not reasonably believe that they had probable cause to arrest Deis after he exited the gas station. Defendants counter that Deis' behavior in their presence led them believe that he "violated the peace," which is a misdemeanor. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); M.C.L. § 764.15(1) ("A peace officer, without a warrant, may arrest a person in any of the following situations: (a) A felony, misdemeanor, or ordinance violation is committed in the peace officer's presence").

Defendants specifically allege that Deis "refused to comply with [Defendants'] orders" to lower his voice and he "was verbally hostile." [ECF No. 22-10, Pg.ID 238] However, Deis' account states the complete opposite. Deis says he was simply asking a question, was on the phone, and left the store when the attendant requested. [ECF No. 24, Pg.ID 343] These are material facts. If Defendants' version is true, then Deis would have provided Defendants with probable cause for a breach of the peace violation. If Deis' account is true, then Defendants would not have had probable cause. This factual dispute is best resolved by a jury. *Liberty Lobby, Inc.,* 477 U.S. at 248.

To establish a wrongful arrest claim, plaintiffs must show that the defendants lacked probable cause. *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir.2002) "A

police officer has probable cause only when he discovers reasonably reliable information that the suspect has committed a crime." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir.2000). An officer is entitled to qualified immunity on a wrongful arrest charge "if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent." *Everson v. Leis*, 556 F.3d 484, 499 (6th Cir. 2009) (internal citations and quotations omitted). This determination requires courts to consider the "totality of the circumstances" and courts may only consider "the information possessed by the arresting officer at the time of the arrest." *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir.). The probable cause standard is lenient, requiring only that "the evidence be sufficient to lead a reasonable officer to conclude that the arrestee has committed or is committing a crime." *Id.*

Deis argues that summary judgment is inappropriate because there is more than "one reasonable determination possible." *Fridley*, 291 F.3d at 872 ("In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible."); *see also Gardenhire*, 205 F.3d at 315 (explaining that the court "must determine whether a jury could conclude that a reasonable officer could have believed that [the arrested individual] had probably committed or [was] committing a crime").

Dearborn Heights' ordinance provides that "[a]ny person who shall make or assist in making any noise, disturbance, trouble or improper diversion, or any rout or riot, by which the peace and good order of the city are disturbed, shall be guilty of a breach of the peace and disorderly conduct." Ordinance 20-156. Although Defendants' assertion that the Sixth Circuit found this statute was not unconstitutionally vague in *American-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 610 (6th Cir. 2005), is correct, Defendants must still use some guiding principles to guide their decisions as they determine whether probable cause exists for breaching the peace. *See Dunn v. City of Boynton Beach*, 192 F. Supp. 3d 1310, 1318 (S.D. Fla. 2016) ("Loitering and prowling cannot be used as a "'catchall' criminal offense" when the police can "not prove anything else.") (internal citations omitted).

The Michigan Supreme Court defined "breach of the peace" as "a violation of public order, a disturbance of the pubic tranquility, by any act or conduct inciting to violence, or tending to provoke or excite other to break the peace." *People v. Johnson*, 48 N.W. 870, 870 (1891).

Under *Johnson's* standard, there is a question of material fact regarding whether Defendants had probable cause to arrest Deis for his actions at the gas station on June 2, 2017. A reasonable jury could find that Deis complied with the officers' instructions and was not violating the peace. The Court finds that a

reasonable jury could find that Defendants' conduct was unreasonable because he did not pose a threat to Defendants or the public.

The Court **DENIES** Deis' Motion for Summary Judgment as it pertains to his unlawful arrest claim as well. Defendants must be granted the opportunity to present evidence that may persuade a jury to find that Defendants had sufficient probable cause to arrest Deis.

### 2. Retaliatory Arrest

Defendants argue that Deis' retaliatory arrest claim must fail because retaliatory arrest claims can only succeed if the plaintiff establishes the absence of probable cause. *Hartman v. Thompson*, 931 F.3d 471, 484 (6th Cir. 2019) (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721 (2019)). In the Sixth Circuit, retaliatory arrest occurs when "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Kennedy v. City of Villa Hills*, 635 F.3d 210, 217 (6th Cir. 2011). Deis further explains that a plaintiff must show that Defendants lacked probable cause through ""objective evidence that [an individual] was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Barlett*, 139 S. Ct. at 1727.

15

The Court finds that Deis has met the requirements for a valid retaliatory arrest claim. Viewing the facts in the light most favorable to Deis, he engaged in protected conduct by asking a police officer a question, a reasonable person would be deterred from asking police officers questions if they were arrested or harassed shortly after asking the question, and the arrest would not have occurred had Deis not informed Defendants of his identity by asking his initial question. Deis has also met the additional burden of showing that other similarly situated individuals, would not be retaliated against for asking a question or conversing with police officers.

The Court **DENIES** Defendants' Motion for Summary Judgment as it pertains to Deis' retaliatory arrest claim as well. Deis contends that Defendants did not have probable cause to arrest him on June 2, 2017, so Deis' arrest was unlawful. Deis also asserts that a lack of probable cause is necessary to prove a retaliatory arrest claim. The Court has already established that a reasonable jury could find that Defendants had probable cause. Summary judgment is precluded for both the unlawful arrest and retaliatory arrest claims.

The Court **DENIES** Deis' Motion for Summary Judgment as it pertains to his retaliatory arrest claim as well. Defendants must be granted the opportunity to present evidence that may persuade a jury to find that Defendants had sufficient probable cause to arrest Deis, which would defeat Deis' claim for retaliatory arrest.

### 3. Qualified Immunity for Excessive Force

Where a plaintiff complains of excessive force in the course of an arrest, investigatory stop, or other seizure, the claim must be analyzed under the Fourth Amendment's objective reasonableness standard, not under a substantive due process standard. *Walton v. City of Southfield*, 995 F.2d 1311, 1342 (6th Cir. 1993) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The proper application of the objective reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The Supreme Court has further explained:

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. The question for the Court is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. This test "requires a 'careful balancing' of the individual

interest in being free from unreasonable seizures and the important governmental interest in protecting the safety of its peace officers and the public." *Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 486 (6th Cir. 2007) (citing *Graham*, 490 U.S. at 396).

Methods of arrest that are "disproportionate in degree to the circumstances" are prohibited by the Fourth Amendment. *See e.g.*, *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 776 (6th Cir. 2004). This right was "clearly established" for qualified immunity purposes at the time that Deis was pushed to the ground and arrested. *Id*. (citation omitted). To survive summary judgment in a scenario involving a disproportionate use of force during arrest, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that Defendants behavior was objectively unreasonable.

Officers must consider three factors when determining the type of force necessary to detain a suspect. *Grawey v. Drury*, 567 F.3d 302, 310 (6th Cir. 2009). Those factors are: "1) the severity of the crime; 2) whether the suspect posed an immediate threat to the safety of the police officer or others; and 3) whether the suspect actively resisted arrest or attempted to evade arrest by flight." *Id.*

Under established law, the Court finds that there is a question of genuine fact about whether Defendants adequately considered the *Grawey* factors before they detained Deis. Deis' identified crime was a misdemeanor for "violating the

peace." Absent further evidence that Deis posed a threat, a reasonable jury could find that it was not objectively reasonable for Defendants to use such force. Deis also alleges that he calmly exited the gas station when asked, to avoid further conflict. There is also a dispute about whether Deis "actively resisted" arrest. Deis may simply have "acted stubbornly," which the Sixth Circuit has opined does not warrant excessive force. *See Malory v. Whiting*, 489 F. App'x 78, 86 (6th Cir. 2012). In light of Deis' actions and established Sixth Circuit precedence, a jury could find that Defendants' actions were objectively unreasonable. *See e.g.*, *id.* ("Plaintiff was subdued and presented no danger to Defendants when Defendants used violent physical force against him.").

Defendants counter that Deis actively resisted arrest, and such resistance allows them to use greater force. Defendants claim that Deis' resistance, coupled with his alleged threats to Smith, justified the force.   Active resistance "can be characterized by physical force, a show of force, or verbal hostility coupled with a failure to comply with police orders." *Jackson v, Washtenaw County*, 678 Fed. Appx. 302, 307 (6th Cir. 2017); *Rudlaff v, Gillispie*, 791 F.3d 638, 646 (6th Cir. 2015) ("non-compliance does not constitute active resistance unless it is paired with other active signs of resistance, such as verbal hostility"); *Hanson v. Madison Cty, Det, Ctr.*, 736 F. App'x 521, 528 (6th Cir. 2018) (opining that additional force may be justified if the detainee exhibits 'verbal hostility' or engages in 'a

deliberate act of defiance'"). Defendants assert that an objectively reasonable officer would have followed their steps when faced with similar facts.

Given Defendants' recitation of events, summary judgment for Deis on the excessive force claim is unwarranted. When qualified immunity cases turn "upon which view of the facts is accepted by the jury," the "jury becomes the final arbiter of [a] claim of immunity." *Brandenburg v. Cureton,* 882 F.2d 211, 215–16 (6th Cir.1989); *Bouggess v. Mattingly* 482 F.3d 886, 888 (6th Cir.2007); *see also Champion v. Outlook Nashville, Inc.,* 380 F.3d 893, 900 (6th Cir.2004) (quoting *Pouillon v. City of Owosso,* 206 F.3d 711, 715 (6th Cir.2000) ("However, where the legal question of qualified immunity [in an excessive force case] turns upon which version of the facts one accepts, the jury, not the judge, must determine liability")); *Stickney v. Trikes,* 1990 WL 110855, *1 (6th Cir.1990) (unpublished) ("It may well be that, under the circumstances present here, Officer Young acted in an objectively reasonable manner. That, however, is a question of fact and does not constitute the predicate for a claim of qualified immunity.").

Deis has offered sufficient evidence to create a genuine issue of material fact regarding each element of his excessive force claim.  Defendant officers' request for qualified immunity on the excessive force claim is **DENIED**.

The Court **DENIES** Deis' Motion for Summary Judgment as it pertains to excessive force as well. Defendants must be granted the opportunity to present evidence that might persuade a jury to find that Deis' resistance, as perceived by the officers, was sufficient enough that an objectively reasonable law enforcement officer would have believed it.

## III.   CONCLUSION

The Court has reviewed the facts and applied them to each party's arguments in their Motions for Summary Judgment. It is only undisputed that Plaintiff Deis pled no contest to the arrest on June 1, 2017, and Officers Mitchell and Guzowski were not directly involved in the events that gave rise to the instant suit. Given this, the Court dismisses Plaintiff's claims against Officers Mitchell and Guzowski.

After analyzing the claims relating to the June 2, 2017 incident, the Court finds that the facts surrounding the events of that day, recited differently by both parties in their cross-motions for summary judgment, raise questions of material fact that preclude granting summary judgment.

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment. Defendants' Motion for Summary Judgment, as it pertains to the claims against Officers Mitchell and Guzowski is **GRANTED**. Plaintiffs' claims against Officers Mitchell

and Guzowski are **DISMISSED**. Defendants' Motion for Summary Judgment, as it pertains to Plaintiff's claims for unlawful arrest, retaliatory arrest, excessive force, failure to intervene, and malicious prosecution, stemming from the events on June 1, 2017 is **GRANTED**. Defendants' Motion for Summary Judgment as it pertains to qualified immunity is **DENIED**. Plaintiff Deis' Motion for Summary Judgment, claiming unlawful and retaliatory arrest, is **DENIED**.

Accordingly,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment [ECF No. 22] is **GRANTED IN PART** and **DENIED IN PART**.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment as it pertains to the claims against Officers Mitchell and Guzowski is **GRANTED**.

IT IS FURTHER ORDERED that Plaintiff Deis' claims against Officers Mitchell and Guzowski are **DISMISSED**.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment, as it pertains to the claims for unlawful arrest, retaliatory arrest, excessive force, failure to intervene, and malicious prosecution, stemming from the June 1, 2017 incident is **GRANTED**.

IT IS FURTHER ORDERED that Deis' claims against all Defendants for the June 1, 2017 incident are **DISMISSED**.

IT IS FURTHER ORDERED that Defendant officers' request for qualified immunity related to the June 2, 2017 excessive force claim is **DENIED**.

IT IS FURTHER ORDERED that Deis' Motion for Summary Judgment [ECF No. 24] is **DENIED**.

IT IS ORDERED.

DATED: November 30, 2020

s/Denise Page Hood
United States District Judge